Joseph M. Welch (SBN 259308)
    jwelch@buchalter.com
Anthony J. Napolitano (State Bar No. 227691)
    anapolitano@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

Michaël Fischer (SBN 202543)
    mfischer@Crosscourtlaw.com
CROSSCOURT LAW, PC
22621 Jeronimo Rd.
Lake Forest, CA 92630
Telephone: (949) 416-8056

Attorneys for Plaintiff
ALL IN ONE TRADING, INC.

**FILED & ENTERED**

**AUG 03 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:16-bk-15692-RK |
| RAMA KRISHNA CHAPARALA, | Chapter 7 |
| Debtor. | Adv. No. 2:16-ap-01332-RK |
| ALL IN ONE TRADING, INC., a California corporation, | **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT** |
| Plaintiff, | **[NOTE: CHANGES MADE BY COURT]** |
| v. | **Hearings:** |
| RAMA KRISHNA CHAPARALA, | Date:    March 10, 2020 and June 23, 2020 |
| Defendant. | Time:    2:30 p.m. |
| | Place:    United States Bankruptcy Court |
| | Edward Roybal Federal Building |
| | 255 East Temple St. |
| | Courtroom 1675 |
| | Los Angeles, CA  90012 |

//

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

1  Hearings were held before this court on March 10, 2020 and June 23, 2020 to consider the

2  *Renewed Motion for Summary Judgment or, Alternatively, Partial Summary Adjudication*

3  *Regarding Nondischargeability of Debt Under 11 U.S.C. § 523* [Adv. Docket No. 38] (the

4  "Renewed Motion") filed by plaintiff All In One Trading, Inc. ("All In One") in the above-

5  captioned adversary proceeding against defendant Rama Krishna Chaparala ("Chaparala").

6  Anthony J. Napolitano, Esq. of Buchalter, a Professional Corporation, appeared on behalf of All In

7  One.  No other parties appeared on the record.

8  On May 30, 2019, the court entered its *Order Granting in Part and Denying in Part*

9  *Plaintiff's Motion for Summary Judgment, or Alternatively, Partial Summary Adjudication*

10  *Regarding Nondischargeability of Debt Under 11 U.S.C. § 523* [Docket No. 31] (the "Partial

11  Summary Adjudication Order").  The court previously granted All In One's prior motion for partial

12  summary adjudication finding in part that All In One's Undisputed Material Facts, Numbers 1

13  through 87, set forth in its *Statement of Undisputed Facts in Support of Motion for Summary*

14  *Judgment or, Alternatively, Partial Summary Adjudication Regarding Nondischargeability of Debt*

15  *Under 11 U.S.C. § 523* [Docket No. 22] were deemed established for purposes of this adversary

16  proceeding.  Those uncontroverted facts are set forth in their entirety below for completeness per

17  the court's direction at the hearing on the Renewed Motion.

18  The court has reviewed and considered the Renewed Motion, the notice of hearing on the

19  Renewed Motion, the supporting declarations and other papers filed in connection with the

20  Renewed Motion, including (1) the Partial Summary Adjudication Order entered on May 30, 2019,

21  (2) the Court's prior *Order Granting Motion to Dismiss Plaintiff's Claims Against Defendant Rama*

22  *Krishna Chaparala Under 11 U.S.C. § 727* [Docket No. 47] (the "Section 727 Dismissal Order")

23  entered on April 22, 2020, (3) the court's prior *Order Approving Stipulation to Dismiss Plaintff's*

24  *Claims Against Defendant Rama Krishna Chaparala Under 11 U.S.C. § 523(a)(2) Only* [Docket

25  No. 53] (the "Section 523(a)(2) Dismissal Order") entered on May 8, 2020, (4) the arguments

26  presented at the hearing on the Renewed Motion, and (5) the record in this case.  Based on the

27  foregoing, and other good cause appearing, therefor,

28  / / /

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                    1

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT

**IT IS HEREBY ORDERED:**

1.      The Renewed Motion is GRANTED; and

2.      The following material facts are uncontroverted and the conclusions of law that follow support granting of the Renewed Motion.

### STATEMENT OF UNCONTROVERTED FACTS

| | |
|---|---|
| 1. | Defendant Chaparala's co-conspirator, Suk Hyon Kim ("Kim"), also uses the names "Michelle Kim," "Nikki Kang," and Michelle Kang. |
| 2. | Kim is married to Defendant Kihoon Kang ("Kang"). |
| 3. | Kim has been in the business of buying and selling perfume since 2004 and has owned several companies to carry out that commerce, including Michelle's Cosmetics, B Blossom, and Everglow Enterprise. |
| 4. | All In One operates a business that buys and resells branded fragrances using its offices and attached warehouse. |
| 5. | On or about October 2004, All In One hired Chaparala as a software developer and salesman of All In One's products. |
| 6. | For nine years, Chaparala performed a variety of duties for All In One including for nine years, Chaparala performed a variety of duties for All In One including (1) placing orders and receiving products from suppliers, (2) transmitting those orders to All in One's warehouse workers, (3) tracking All in One's inventory electronically, (4) updating All in One's accounting database, and (5) making sales to All in One's customers. |
| 7. | As part of his job, Chaparala had access to, among other things, All In One's accounting and inventory systems as well as All In One's customer information, sales histories, operations, processes, products, drawings, plans, and other related data. |
| 8. | During Chaparala's employment with All In One, All In One had suppliers from which it would buy products on an ongoing weekly or monthly basis and customers it would sell to on that same ongoing weekly or monthly basis. |
| 9. | Chaparala admits that, while employed by All In One, he formed a side company, RK Trading, in early 2005. |
| 10. | Chaparala admits that RK Trading was in the same line of business as All In One. |
| 11. | Chaparala admits that RK Trading competed against All In One. |
| 12. | Chaparala admits that RK Trading conducted business with All In One's customers and suppliers. |
| 13. | Chaparala admits that he used All In One's computer system, customer database, inventory database, and other resources to compete against All In One. |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

| 14. | Chaparala admits that he never informed All In One of his competing business and, in fact, concealed it from All In One. |
|---|---|
| 15. | All In One terminated Chaparala's employment on September 11, 2013, after All In One discovered Chaparala's side business, RK Trading. |
| 16. | RK Trading had about 15 vendors and 25 customers. |
| 17. | Kim, through her companies, had business transactions with All In One. |
| 18. | Kim met Chaparala in 2004 as a customer of All In One because Chaparala would occasionally answer the phones for All In One and the two would discuss business. |
| 19. | Kim knew that Chaparala had a side company called RK Trading and that RK Trading was in the same line of business as All In One—buying and selling perfume. |
| 20. | Kim, through her companies, had business transactions with RK Trading for the purchase and sale of perfume. |
| 21. | Kim admits having on occasion assisted Chaparala in improperly diverting business opportunities away from All In One Trading. |
| 22. | Kim helped finance RK Trading. |
| 23. | Kim lent money to Chaparala whenever Chaparala needed it. |
| 24. | Chaparala sometimes lent money to Kim. |
| 25. | According to Chaparala, Chaparala and Kim were good friends. |
| 26. | Kim would ask Chaparala the identity of All In One's vendors. |
| 27. | Chaparala and Kim conducted business together whereby they imported goods that were delivered to Kim's brother's warehouse. |
| 28. | Chaparala transmitted invoices to Kim for purchase of perfumes from third party vendors and referenced the shipment as "our shipment." |
| 29. | Chaparala used Kim's sales permit to conduct business with other buyers or sellers of perfume. |
| 30. | Chaparala wired thousands of dollars to Kim in her personal bank account. |
| 31. | Chaparala and Kim had invoices reflecting an equal split of the profits from their joint sales of perfume together. |
| 32. | All In One brought suit against Chaparala in January 2014 before the Los Angeles Superior Court (the "Superior Court") (case number VC 063765) and amended its Complaint to name Kim in September 2015 (the "State Court Action"). |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT**

| 33. | All In One's causes of actions against Chaparala in the State Court Action were: 1) breach of duty of loyalty; 2) breach of contract; 3) intentional interference with contractual relations; 4) intentional interference with prospective economic relations; 5) negligent interference with prospective economic relations; 6) conversion; 7) unfair competition; and 8) fraudulent concealment. All In One's causes of actions against Kim in the State Court Action were: 1) intentional interference with contractual relations; 2) intentional interference with prospective economic relations; 3) negligent interference with prospective economic relations; and 4) unfair competition. |
|---|---|
| 34. | Kang served as the Chief Executive Officer, the Chief Financial Officer, and a Director of In One Corporation. |
| 35. | In One Corporation had, as dbas, Everglow Enterprise and Michelle's Cosmetics. |
| 36. | The State Court Action was tried before a 12-member jury from April 12 through April 29, 2016 and featured 14 full days of trial. |
| 37. | The parties at the trial of the State Court Action presented 11 witnesses and thousands of pages of exhibits. |
| 38. | The jury in the State Court Action signed a Verdict Form regarding Chaparala on April 29, 2016. |
| 39. | The jury in the State Court Action signed a Verdict Form regarding Kim on April 29, 2016. |
| 40. | The jury in the State Court Action found Kim liable on the causes of action for intentional interference with contractual relations and intentional interference with prospective economic relations. |
| 41. | The jury in the State Court Action found Chaparala liable on the causes of action for breach of duty of loyalty, breach of contract, conversion, fraudulent concealment, intentional interference with contractual relations and intentional interference with prospective economic relations. |
| 42. | The Court in the State Court Action entered judgment against In One Corporation—the company for which Kang was the Chief Executive Officer, the Chief Financial Officer, and a Director. |
| 43. | The jury in the State Court Action found there were contracts between All In One Trading on the one hand, and its vendors and customers on the other. |
| 44. | The jury in the State Court Action found that Chaparala knew of those contracts. |
| 45. | The jury in the State Court Action found that Chaparala's conduct prevented performance or made performance more expensive or difficult. |
| 46. | The jury in the State Court Action found that Chaparala either intended to disrupt performance of the contracts or knew that disruption of performance was certain or substantially certain to occur. |
| 47. | The jury in the State Court Action found that Chaparala's conduct was a substantial factor in causing harm to Plaintiff. |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

| 48. | The jury in the State Court Action found that the harm caused by Chaparala's intentional interference with contracting resulted in damages to Plaintiff in an amount of $420,547.96 not counting interest. |
|---|---|
| 49. | The jury in the State Court Action found that All In One and its vendors had economic relationships probably resulting in an economic benefit to All In One. |
| 50. | The jury in the State Court Action found that Chaparala knew or should have known of those relationships. |
| 51. | The jury in the State Court Action found that Chaparala engaged in wrongful conduct regarding those relationships. |
| 52. | The jury in the State Court Action found that by engaging in the wrongful conduct, Chaparala knew or should have known this relationship would be disrupted. |
| 53. | The jury in the State Court Action found that All In One's relationships were disrupted. |
| 54. | The jury in the State Court Action found that Chaparala's conduct was a substantial factor in causing harm to All In One. |
| 55. | The jury in the State Court Action found that the harm caused by Chaparala's intentional interference with prospective economic relations resulted in damages to All In One in an amount of $234,729.00 not counting interest. |
| 56. | The jury in the State Court Action found that Kim was aware of Chaparala's plan to interfere with All In One's contracts with its customers and vendors. |
| 57. | The jury in the State Court Action found that Kim agreed with Chaparala's plan and intended to interfere with All In One's contracts with its customers and vendors. |
| 58. | The jury in the State Court Action found that Chaparala engaged in the conduct giving rise to All In One's claim for intentional interference with contractual relations with malice, oppression or fraud. |
| 59. | The jury in the State Court Action found that Chaparala intentionally failed to disclose a certain fact that All In One did not know and could not have reasonably discovered. |
| 60. | The jury in the State Court Action found that Chaparala intended to deceive All In One by concealing the fact. |
| 61. | The jury in the State Court Action found that All In One would have reasonably behaved differently had the omitted information been disclosed. |
| 62. | The jury in the State Court Action found that Chaparala's concealment was a substantial factor in causing harm to Plaintiff. |
| 63. | The jury in the State Court Action found that the harm caused by Chaparala's concealment resulted in damages to All In One in the amount of $420,547.96 for past lost profits and $234,729 for future lost profits. |
| 64. | The jury in the State Court Action found that Chaparala engaged in the conduct related to the concealment claim with malice, oppression or fraud. |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

5

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT

| 65. | The jury in the State Court Action found that All In One own or had a right to possess its product inventory. |
|---|---|
| 66. | The jury in the State Court Action found that Chaparala intentionally and substantially interfered with All In One's property by taking possession of All In One's property or by preventing All In One from having access to All In One's property. |
| 67. | The jury in the State Court Action found that All In One did not consent to Chaparala's conduct and that conduct was a substantial factor in causing harm to All In One. |
| 68. | The jury in the State Court Action found that the harm caused by Chaparala's conversion of All In One's inventory resulted in damages to All In One in the amount of $5,700,000.00. |
| 69. | The jury in the State Court Action found that Chaparala engaged in the conduct related to the conversion claim with malice, oppression or fraud. |
| 70. | The jury in the State Court Action found that Chaparala engaged in the conduct giving rise to All In One's claim for intentional interference with contractual prospective economic relations with malice, oppression or fraud. |
| 71. | The jury in the State Court Action found that Chaparala was an employee of All In One and knowingly acted against All In One's interest in connection with that employment. |
| 72. | The jury in the State Court Action found that All In One did not give informed consent to Chaparala's conduct. |
| 73. | The jury in the State Court Action found that Chaparala's conduct was a substantial factor in causing All In One's harm. |
| 74. | The jury in the State Court Action found that the harm caused by Chaparala's breach of the duty of loyalty resulted in damages to All In One in the amount of $420,547.96 for lost profits, $329,320.00 for salary paid during the period of secret competition, and $30,448.00 for the value of benefits paid during the period of secret competition. |
| 75. | The jury in the State Court Action found that Chaparala engaged in this conduct with malice, oppression or fraud. |
| 76. | The jury in the State Court Action also awarded All In One $90,000 in punitive damages against Chaparala. |
| 77. | On March 27, 2017, Chaparala appealed the Judgment[1] to the California Court of Appeal Second District (the "Appellate Court"). |
| 78. | On December 13, 2018, the Appellate Court entered its letter ruling dismissing Chaparala's appeal. |
| 79. | The Appellate Court issued its Remittitur on February 13, 2019 remanding the matter to the Superior Court |

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Renewed Motion.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                6

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

| 80. | On June 28, 2016, Kim filed her chapter 7 bankruptcy petition commencing the case designated as *In re Suk Hyon Kim*, Case No. 2:16-bk-18595-BB (Bankr. C.D. Cal.) pending before Judge Sheri Bluebond. |
|-----|-----|
| 81. | On January 12, 2017, All In One filed its Complaint against Kim seeking a determination of non-dischargeabilty under section 523(a)(6) commencing the adversary proceeding designated as *All In One Trading, Inc. v. Kim (In re Suk Hyon Kim)*, Adv. Proc. No. 2:17-ap-01010-BB (Bankr. C.D. Cal.). |
| 82. | Kim did not appeal the judgment against her in the State Court Action thus rendering that judgment final. |
| 83. | On September 26, 2017 All In One filed its Motion for Summary Judgment or, in the Alternative, Partial Summary Adjudication seeking a determination that its claims against Kim were nondischargeable under section 523(a)(6) based on issue preclusion from the underlying judgment in the State Court Action. |
| 84. | On January 4, 2018, the bankruptcy court granted the motion, entered its non-dischargeable judgment against Kim under section 523(a)(6), and awarded damages in the amount of $655,276.96 (the amount of the underlying judgment in the State Court Action) plus $29,500.28 (the recoverable costs awarded in the State Court Action) and post judgment interest in the amount of $64,725.52 (calculated at the rate of 10% per annum). |
| 85. | In connection with the State Court Action, All In One submitted its Revised List of Proposed Jury Instructions, part of which was based upon the form California Civil Jury Instructions, which included Instruction No. 3947 entitled Punitive Damages – Individual and Entity Defendants – Trial Not Bifurcated. |
| 86. | The Court instructed the jury accordingly with respect to Instruction No. 3947 providing that the jury may award punitive damages against Chaparala only if All In One proves by clear and convincing evidence that Chaparala engaged in that conduct with malice, oppression, or fraud. |
| 87. | Even though the jury in the State Court Action did not find that Kim acted with malice, oppression or fraud under a clear and convincing evidence standard, Judge Bluebond found that the claims for intentional interference with contractual relations and intentional interference with prospective economic relations satisfied the preponderance of evidence standard necessary for finding a willful and malicious injury under section 523(a)(6). |

## CONCLUSIONS OF LAW

### A.    The Summary Judgment Standard.

1.    Summary judgment is appropriate if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). Under Rule 56(c) of the Federal Rules of Civil Procedure (made applicable herein by Rule

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                                7

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

7056 of the Federal Rules of Bankruptcy Procedure), the moving party bears the initial burden of establishing that there are no genuine disputes of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

2. "A 'material fact' is one that is relevant to an element of a claim or defense or whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electric Service v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Once the moving party's burden is met by presenting evidence which, if uncontroverted, would entitle the moving party to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Rudberg v. State of Nevada ex rel. Southern Nevada Children's Home*, 896 F. Supp. 1017, 1019-20 (D. Nev. 1995) (citing *Anderson*, 477 U.S. at 250).

3. The respondent "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, or answer to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). A mere "scintilla" of evidence supporting the respondent's position will not be sufficient. *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine' issue for trial." *Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 545 (5th Cir. 2000) (citations omitted).

4. As discussed in Parts B. through E., *infra*, the foregoing uncontroverted facts submitted by All In One satisfies its burden as plaintiff of establishing that no genuine disputes of material fact exist with respect to the claims for which summary judgment has been sought. Further, the Renewed Motion was not opposed by defendant Chaparala. Notwithstanding Chaparala's lack of opposition (written or otherwise), the Court independently determines that there are no genuine disputes of material fact and entry of judgment is warranted. *See. e.g., Cristobal v.*

BUCHALTER
A Professional Corporation
Los Angeles

BN 39940383V2                                                    8

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

*Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir.1994) (noting that an unopposed motion may be granted only after the court determines that there are no material issues of fact).

**B.      The Applicability of the Doctrines of Res Judicata and Collateral Estoppel.**

**1.      The Judgment in the State Court Action is res judicata in this action with respect to the determination of the amount of the debt.**

5.      The Court determines that the Superior Court's Judgment and related findings against Chaparala for (a) intentional interference with prospective economic relations, (b) intentional interference with contractual relations, (c) conversion, (d) fraudulent concealment and (e) breach of duty of loyalty should be given preclusive effect by this court.

6.      "Bankruptcy courts recognize and apply the basic principles of res judicata in determining the effect to be given in bankruptcy proceedings to judgments rendered in other forums." *Comer v. Comer (In re Comer)*, 723 F.2d 737, 739 (9th Cir. 1984) (citation omitted). In determining the res judicata effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of res judicata." 28 U.S.C. § 1738; *see also In re Comer*, 723 F.2d at 739-41. Bankruptcy courts must therefore give the preclusive effect to a state court judgment that it would receive in the courts of that state. *In re Comer*, 723 F.2d at 739-41. If a state court judgment is entitled to res judicata effect, the bankruptcy court may not look behind that judgment to determine the actual amount of the judgment debt obligation. *Id.*

7.      Res judicata does not apply to the determination of whether a debt is excepted from discharge under the Bankruptcy Code since that matter is litigated for the first time in a debt dischargeability proceeding, and not in a pre-bankruptcy collection proceeding. *In re Comer*, 723 F.2d at 739-41 (citing *Brown v. Felsen*, 442 U.S. 127 (1979)). In California, "[r]es judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002) (citation omitted). Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding. *Busick v. Workmen's Compensation Appeals Board*,

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

7 Cal. 3d 967, 972-74 (1972).

8.    The foregoing uncontroverted facts demonstrate by a preponderance of the evidence that the Judgment in the State Court Action was final and on the merits (see SUF[2] Nos. 32 through 79), that the instant action to determine the amount of the liability to be excepted from discharge is the same as the prior proceeding (see SUF Nos. 32, 33, 48, 55, 63, 68, 74, and 76), and that the parties in the instant action were parties to the prior proceeding (see SUF Nos. 32, 42 and 77). Thus, the Judgment as to the amount of the liability of Chaparala is entitled to res judicata effect because the Judgment of liability is a final judgment on the merits, the amount of liability was actually litigated in the State Court Action, and the State Court Action involved the same parties or parties in privity with this action.  Accordingly, the amount of the debt in the Judgment is res judicata in this case. *See In re Comer*, 723 F.2d at 739-41.

## 2.    The doctrine of collateral estoppel applies to the discrete issues underlying the Judgment in this nondischargeability action.

9.    The Court determines that the underlying findings giving rise to the Judgment from the State Court Action are also entitled to collateral estoppel effect.

10.    It is well-settled that collateral estoppel (*i.e.*, issue preclusion) applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284-85, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008) (citation, internal quotation marks omitted).

11.    A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 831-32 (9th Cir. BAP 2006). "In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994) (full

---

[2]  "SUF" refers to the foregoing "Statement of Uncontroverted Facts."

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

10

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFF FOR SUMMARY JUDGMENT

faith and credit applied to state court judgments for collateral estoppel purposes citing 28 U.S.C. § 1738).

12.    The Bankruptcy Appellate Panel in *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) held that under California law the application of issue preclusion requires that:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*Id.* at 462 (citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767, 795 P.2d 1223 (1990)).    The Bankruptcy Appellate Panel in *Plyam* further observed that California places additional limitations on issue preclusion finding that courts may only give preclusive effect to a judgment "if application of preclusion furthers the public policies underlying the doctrine." *Id.* at 462 (citing *Lucido*, 51 Cal.3d at 342-43); *see also Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006).

13.    With respect to the first *Plyam* factor, the court determines that the issues sought to be precluded from relitigation are the discrete issues supporting the Superior Court's findings for the underlying claims in the State Court Action: (a) intentional interference with prospective economic relations; (b) intentional interference with contractual relations; (c) conversion; (d) fraudulent concealment; and (e) breach of duty of loyalty.    With regard to the second *Plyam* factor, the court determines that the issues were actually litigated in the State Court Action as evidenced by the 14-day trial and the resulting Judgment.    The fact that these issues have been actually litigated has been established by SUF Nos. 32 through 79.

14.    With regard to the third *Plyam* factor, the court determines that the issue was necessarily decided in the prior State Court Action.    The jury had made numerous specific findings of fact in reaching its verdict finding Chaparala liable for:    (a) intentional interference with prospective economic relations; (b) intentional interference with contractual relations;

(c) conversion; (d) fraudulent concealment; and (e) breach of duty of loyalty.  *See* SUF Nos. 43 through 76.

15.    With regard to the fourth *Plyam* factor, the court determines that the dismissal of the appeal of the Judgment to the California Court of Appeals has resulted in the entry of a final Judgment against Chaparala in All in One's favor.  SUF Nos. 32, 38, 41, 77, 78 and 79.  The fifth *Plyam* factor requires that the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.  The court determines that this factor is satisfied as Chaparala is the defendant in both the State Court Action and this adversary proceeding.

16.    The court further determines that the application of issue preclusion will further the public policy underlying the doctrine.  Here, judicial economy will be served as the need for a second trial will be avoided.  *See, e.g.*, *Lucido*, 51 Cal. 3d at 343 (citations omitted).

**C.    All In One is entitled to a determination of nondischargeability of debt under 11 U.S.C. § 523(a)(6).**

17.    Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C., excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  Under Section 523(a)(6), an individual debtor may not discharge a debt to the extent that such debt was obtained "for willful or malicious injury by the debtor to another" or "to the property of another."  *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).   "The Supreme Court in Kawaauhau v. Geiger . . . made it clear that for section 523(a)(6) to apply, the actor must intend the consequences of the act, not simply the act itself." *Ormsby v. First American Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (citations omitted).   "The injury must be deliberate or intentional, 'not merely a deliberate or intentional **act** that leads to injury.'"  *In re Plyam*, 530 B.R. 456, 463 (9th Cir. BAP 2015) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original)).

18.    As discussed in Part C.1. and 2, *infra*, All in One has established that there are no genuine issues of material fact and that it is entitled to a determination of nondischargeability under 11 U.S.C. § 523(a)(6).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

12

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

1.    **The standards for establishing a willful and malicious injury under Section 523(a)(6).**

19.    An injury is "willful" "when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *In re Jercich*, 238 F.3d at 1208. "Willful" intent does not require that the debtor had the specific intent to injure the creditor, if the act was intentional and the debtor knew that it would necessarily cause injury. *Id.* at 1207. "Willful" means "voluntary" or "intentional." *Kawaauhau v. Geiger*, 523 U.S. at 61-63 (citation omitted). This standard focuses on the debtor's subjective intent, and not "whether an objective, reasonable person would have known that the actions in question were substantially certain to injure the creditor." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1145-46 (9th Cir. 2002).

20.    The "willful" requirement is separate and distinct from the "malicious" requirement. *See Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 706 (9th Cir. 2008). A plaintiff must also prove "malicious" injury to establish its claim under Section 523(a)(6), which is a requirement separate from the "willful" requirement. *In re Su*, 290 F.3d at 1146. An injury is "malicious" if it involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily caused injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209 (citing *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)). This definition "does not require a showing of biblical malice, i.e. personal hatred, spite, or ill-will." *In re Bammer*, 131 F.3d at 791. Courts have also held that malice may be constructive or implied. *Hope v. Walker (In re Walker),* 48 F.3d 1161, 1164 (11th Cir. 1995). Implied malice may be demonstrated "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *First National Bank of Maryland v. Stanley (In re Stanley),* 66 F.3d 664, 668 (4th Cir. 1995) (citation omitted).

21.    Section 3294(c)(1) of the California Civil Code specifically defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). The Bankruptcy Appellate Panel of the Ninth Circuit stated that a finding of *only* "despicable" malice by the state court under Section 3294 may not be

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

13

1   by itself sufficient to support collateral estoppel under Section 523(a)(6) because the alternative

2   standard of the conscious disregard of the rights or safety of others is not the equivalent of

3   intentional conduct required under Section 523(a)(6).  *In re Plyam*, 530 B.R. at 463-70 (citing

4   *Taylor v. Superior Court*, 24 Cal. 3d 890, 895-96 (1979)).  "Malice may be inferred based on the

5   nature of the wrongful act."  *In re Ormsby*, 591 F.3d at 1207 (citing *Transamerica Commercial*

6   *Financial Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991)).

7       22.    Any debt arising from a willful and malicious act, without cause or excuse is

8   excepted from discharge.  *Impulsora del Territorio Sur. S.A. v. Cecchini (In re Cecchini),* 772 F.2d

9   1493 (1985), rehearing denied, 780 F.2d 1440 (9th Cir. 1986).  For the purposes of Section

10  523(a)(6), an act which constitutes an intentional tort will satisfy Section 523(a)(6).  *See*

11  *Kawaauhau v. Geiger*, 523 U.S. 57, 61-64, 118 S. Ct. 974 (1998).

12      23.    As discussed in Part C.2., *infra*, All in One has established that there are no genuine

13  disputes of material fact and that it has satisfied the standards for establishing a willful and

14  malicious injury under 11 U.S.C. § 523(a)(6).  The court determines that the Judgment in the State

15  Court Action for (a) intentional interference with prospective economic relations, (b) intentional

16  interference with contract, (c) conversion, (d) fraudulent concealment, and (e) breach of the duty

17  of loyalty should be given preclusive effect resulting in judgment from this court that the debt from

18  the underlying Judgment against Chaparala in the State Court Action is nondischargeable under

19  11 U.S.C. § 523(a)(6) with respect to the amount of damages attributable to each of those causes

20  of action.

21  **2.    The Court should determine that each of the causes of action in the
        Judgment meets the collateral estoppel requirements for purposes of
22      Section 523(a)(6).**

23          **a.    Intentional Interference with Prospective Economic Relations**

24      24.    Under California law, courts recognize the tort of intentional interference with

25  prospective business relations or advantages.  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,

26  11 Cal.4th 376, 45 Cal.Rptr.2d 436 (1995).  In *Della Penna*, the court stated that "a plaintiff seeking

27  to recover for alleged interference with prospective economic relations has the burden of pleading

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                    14
**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

and proving that the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna*, 11 Cal.4th at 393-94 (citations omitted); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158, 131 Cal. Rptr. 2d 29 (2003) ("a plaintiff that chooses to bring a claim for interference with prospective economic advantage has a more rigorous pleading burden since it must show that the defendant's conduct was independently wrongful").

25.    In *Bane v. Hajime Sorayama (In re Bane)*, the Bankruptcy Appellate Panel recognized that "to prevail on a claim for interference with prospective economic advantage under California law, a plaintiff must demonstrate more than intent to injure (*i.e.*, willfulness); the conduct must be independently wrongful." 2010 Bankr. LEXIS 3067 at *16-19 (9th Cir. BAP Jan. 15, 2010). The *Bane* court likened the additional requirement of independent wrongfulness to the requirement in Section 523 that the conduct be malicious in addition to willful. *Id.* "If a court determines that a defendant's conduct was independently wrongful, the requisites of maliciousness (wrongful act done intentionally without just cause) under *Su* are satisfied." *Id.*

26.    The California Supreme Court in *Della Penna* set forth the elements for the tort of intentional interference with prospective economic relations, which require that the plaintiff establish that the defendant not only knowingly interfered with the plaintiff's expectancy but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself. *Della Penna*, 11 Cal.4th at 393.

27.    The uncontroverted facts establish that the jury in the State Court Action made a number of findings when it held that Chaparala intentionally interfered with All In One's prospective economic relations:

a.    All In One and its vendors had economic relationships probably resulting in an economic benefit to All In One, SUF Nos. 4 through 8 and 49;

b.    Chaparala knew of those relationships, SUF Nos. 4 through 8 and 50;

c.    Chaparala engaged in wrongful conduct regarding those relationships, SUF Nos. 9 through 14, 17 , 21, 26 through 31, and 51;

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

d. By engaging in the wrongful conduct, Chaparala knew or should have known that this relationship would be disrupted, SUF Nos. 7 through 14, 20, 21, and 52;

e. All In One's relationships were disrupted, SUF Nos. 9 through 14, 21, and 53;

f. Chaparala's conduct was a substantial factor in causing harm to All In One, SUF Nos. 6 through 14, and 54;

g. The harm caused by Chaparala's intentional interference with prospective economic relations resulted in damages to All In One in an amount of $234,729.00 not counting interest, SUF No. 55; and

h. Chaparala engaged in this conduct with malice, oppression or fraud, SUF No. 70.

28.    These issues are relevant to and encompassed within those that a bankruptcy court would consider in determining if Chaparala's actions constituted a willful and malicious tortious injury to All in One under 11 U.S.C. § 523(a)(6) as the jury's findings of intentional tortious misconduct establish willfulness and malicious injury.  Relitigation of issues already decided is precluded.  *Bugna v. McArthur (In re Bugna),* 33 F.3d 1054, 1056-58 (9th Cir. 1994) ("The bankruptcy court's otherwise broad powers do not include the power to reject a party's invocation of collateral estoppel on an issue fully and fairly litigated in another court.").

29.    The court determines that the underlying issues are identical, the Superior Court's Judgment was final and on the merits, the same parties are involved in both actions; therefore, the requisites for application of issue preclusion under *Plyam* are satisfied.  The court determines that All in One is entitled to judgment against Chaparala under 11 U.S.C. § 523(a)(6) as a matter of law based on the Judgment in the State Court Action on All In One's claim against him for intentional interference with prospective economic relations.

### b.    Intentional Interference with Contractual Relations

30.    Under California law, courts recognize the tort of intentional interference with contractual relations.  *Reeves v. Hanlon,* 33 Cal.4th 1140, 1148, 17 Cal.Rptr.3d 289 (2004).  In *Reeves*, the court stated that intentional interference with contractual relations requires proof of: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                    16

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

1  relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting
2  damage. *Reeves*, 33 Cal. 4th at 1148.

3  31.     The Ninth Circuit, in considering the knowledge element as it relates to intentional
4  interference with contractual relations, has similarly stated that "[w]hen the defendant performs the
5  act that causes the interference, the defendant need not know exactly who is a party to the contract,
6  so long as he knows he is interfering with a contractual relationship." *Altera Corp. v. Clear Logic,*
7  *Inc.*, 424 F.3d 1079, 1091-92 (9th Cir. 2005).

8  32.     The uncontroverted facts establish that the jury in the State Court Action made a
9  number of findings when it held that Chaparala intentionally interfered with All In One's
10  contractual relations:

11      a.     There were contracts between All In One Trading and its vendors and
12          customers, SUF Nos. 4 through 8, and 43;

13      b.     Chaparala knew of those contracts, SUF Nos. 4 through 8, and 44;

14      c.     Chaparala's conduct prevented performance or made performance more
15          expensive or difficult, SUF Nos. 9 through 14, 17, 21, 26 through 31, and
        45;

16      d.     Chaparala either intended to disrupt performance of the contracts or knew
17          that disruption of performance was certain or substantially certain to occur,
        SUF Nos. 7 through 14, 20, 21, and 46;

18      e.     Chaparala's conduct was a substantial factor in causing harm to All in One,
        SUF Nos. 6 through 14, and 47;

19      f.     The harm caused by Chaparala's intentional interference with contract
20          resulted in damages to All in One in an amount of $420,547.96 not counting
        interest, SUF No. 48; and

21      g.     Chaparala engaged in this conduct with malice, oppression or fraud, SUF
22          No. 58.

23  33.     The court determines that these issues are relevant to and encompassed within those
24  that a bankruptcy court would consider in determining if Chaparala's actions constituted a willful
25  and malicious tortious injury to All in One under 11 U.S.C. § 523(a)(6).  The court finds that the
26  underlying issues are identical as the jury's findings of intentional tortious misconduct establish
27  willfulness and malicious injury, the Superior Court's Judgment was final and on the merits, the
28  same parties are involved in both actions; therefore, the requisites for application of issue preclusion

1 under *Plyam* are satisfied.  The court determines that All In One is entitled to judgment against

2 Chaparala under 11 U.S.C. § 523(a)(6) as a matter of law based on the Judgment in the State Court

3 Action on All in One's claim against him for  intentional interference with contractual relations.

**c.      Conversion**

5      34.      A conversion determined under California law establishes the debtor's "wrongful

6 exercise of dominion over the personal property of another," but it "does not necessarily decide

7 that the defendant has caused 'willful and malicious injury' within the meaning of § 523(a)(6)."

8 *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1037-39 (9th Cir. 2001) (citing *Taylor v. Forte Hotels

9 Internationa'l*, 235 Cal.App.3d 1119, 1124, 1 Cal.Rptr.2d 189 (1991)).  In *McIntyre v. Kavanaugh*,

10 the Supreme Court recognized the distinction between dischargeable conversions and those that are

11 excepted from discharge under the predecessor to Section 523(a)(6).  *McIntyre v. Kavanaugh*, 242

12 U.S. 138, 37 S. Ct. 38 (1916).  The Supreme Court found that a wrongful conversion, voluntarily

13 committed with knowledge that the act is wrongful, and which necessarily causes injury meets the

14 "willful and malicious" standard.  *Id* at 141-42, 37 S.Ct. at 40.

15      35.      The Bankruptcy Appellate Panel in *Thiara v. Spycher Brothers (In re Thiara)*, 285

16 B.R. 420, 427-34 (9th Cir. BAP 2002) provided an exhaustive analysis of conversions that fall

17 within the willful and malicious exception to discharge under Section 523(a)(6).  These examples

18 cited by *Thiara* include:  *McIntyre*, 242 U.S. at 141-42 (misappropriation of stock certificates held

19 as collateral); *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999) (attorney's

20 knowing withholding of settlement proceeds subject to a former attorney's lien); *Jercich*, 238 F.3d

21 at 1207-08 (debtor/employer's failure to pay wages to a judgment creditor/employee).  *In re Thiara*,

22 285 B.R. 429-34 (providing an exhaustive analysis of conversions as a "willful and malicious"

23 injury under Section 523(a)(6)).

24      36.      The Bankruptcy Appellate Panel in *Thiara* further held that proof of the debtor's

25 knowledge that he or she is harming the creditor by converting the creditor's property establishes

26 that the debtor either intended to inflict such injury or believed that such injury was substantially

27 certain to occur, and thus meets the willfulness requirement of Section 523(a)(6).  *Id.* at 432-33.

28 The Bankruptcy Appellate Panel further recognized that for a conversion that is both intentional

and willful "malice may be inferred from the nature of the wrongful act." *Id.* at 434 (citing *Transamerica Commercial Financial Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991)).

37.    In California, "the elements of a conversion are the creditor's ownership or right to possession of the property at the time of the conversion; the debtor's conversion by a wrongful act or disposition of property rights; and damages." *In re Thaira*, 285 B.R. at 427 (quoting *Farmers Insurance Exchange v. Zerin*, 53 Cal. App. 4th 445, 451, 61 Cal. Rptr. 2d 707, 709 (1997). For purposes of nondischargeability, the Supreme Court in *McIntyre* added that a wrongful conversion, voluntarily committed with knowledge that the act is wrongful, and which necessarily causes injury meets the "willful and malicious" standard. *McIntyre*, 242 U.S. at 141-42.

38.    The uncontroverted facts establish that the jury in the State Court Action made a number of findings when it held that Chaparala converted All In One's inventory with a wrongful intent:

    a.    All In One owned or had a right to possess its product inventory, SUF Nos. 4 through 8, and 65;

    b.    Chaparala intentionally and substantially interfered with All In One's property by taking possession of All In One's property or by preventing All In One from having access to All In One's property, SUF Nos. 4 through 14, 21, 26 through 31, 66;

    c.    All In One did not consent to Chaparala's conduct and that conduct was a substantial factor in causing harm to All In One, SUF Nos. 5, 6, 9 through 14, and 67;

    d.    The harm caused by Chaparala's conversion of All In One's inventory resulted in damages to All In One in the amount of $5,700,00.00, SUF No. 68; and

    e.    Chaparala engaged in this conduct with malice, oppression or fraud, SUF No. 69.

39.    The court determines that these actions show that Chaparala committed the tort of conversion with the requisite wrongful intent to render the damages arising from the tort nondischargeable under Section 523(a)(6) as the jury's findings of intentional tortious misconduct establish willfulness and malicious injury. The court determines that all of these issues are relevant to and encompassed within those that a bankruptcy court would consider in determining if

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

19

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

1    Chaparala's actions constituted a willful and malicious tortious injury to All in One under 11 U.S.C.

2    § 523(a)(6).  The court determines that the underlying issues are identical, the Superior Court's

3    Judgment was final and on the merits, the same parties are involved in both actions; therefore, the

4    requisites for application of issue preclusion under *Plyam* are satisfied.  The court determines that

5    All in One is entitled to judgment against Chaparala under 11 U.S.C. § 523(a)(6) as a matter of law

6    based on the Judgment in the State Court Action on All In One's claim against him for conversion.

7                              **d.    Fraudulent Concealment**

8        40.    The elements of a claim for fraudulent concealment require the plaintiff to show

9    that:

10           (1) the defendant . . . concealed or suppressed a material fact, (2) the
             defendant [was] under a duty to disclose the fact to the plaintiff, (3) the
11           defendant . . . intentionally concealed or suppressed the fact with the intent
             to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would
12           not have acted as he did if he had known of the concealed or suppressed
             fact, and (5) as a result of the concealment or suppression of the fact, the
13           plaintiff must have sustained damage.

14   *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612-13 (1992) (citation

15   omitted).  The court in *Metheny v. JL Bev. Co., LLC*, 2017 WL 661353, 2017 U.S. Dist. LEXIS

16   23262 (N.D. Cal. 2017) affirmed the bankruptcy court's grant of summary judgment that gave

17   preclusive effect to a state court judgment finding that the creditor's claims for fraudulent

18   concealment, among others, supported a finding that the debt was non-dischargeable under section

19   523(a)(6).  *Id.* at *3-4.

20       41.    The uncontroverted facts establish that the jury in the State Court Action made a

21   number of findings when it held that Chaparala engaged in fraudulent concealment with respect to

22   his dealings with All In One:

23       a.    Chaparala intentionally failed to disclose a certain fact that All In One did
24             not know and could not have reasonably discovered, SUF Nos. 9 through
               15, 21, 29, and 59;
25
         b.    Chaparala intended to deceive All In One by concealing the fact, SUF
26             Nos. 14, 15, 21 and 60;

27       c.    All In One would have reasonably behaved differently had the omitted
28             information been disclosed, SUF Nos. 15 and 61;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

d.    Chaparala's concealment was a substantial factor in causing harm to All in One, SUF No. 62;

e.    The harm caused by Chaparala's concealment resulted in damages to All In One in the amount of $420,547.96 for past lost profits and $234,729.00 for future lost profits, SUF No. 63; and

f.    Chaparala engaged in this conduct with malice, oppression or fraud, SUF No. 64.

42.    The court determines that these issues are relevant to and encompassed within those that a bankruptcy court would consider in determining if Chaparala's actions constituted a willful and malicious tortious injury to All In One under 11 U.S.C. § 523(a)(6) as the jury's findings of intentional tortious misconduct establish willfulness and malicious injury.  The court determines that the underlying issues are identical, the Superior Court's Judgment was final and on the merits, the same parties are involved in both actions; therefore, the requisites for application of issue preclusion under *Plyam* are satisfied.  The court determines that All In One is entitled to judgment against Chaparala under 11 U.S.C. § 523(a)(6) as a matter of law based on the Judgment in the State Court Action on All in One's claim against him for fraudulent concealment.

### e.    Breach of the Duty of Loyalty

43.    Under California law, the elements of a breach of the duty of loyalty claim are: "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach."  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410, 58 Cal.Rptr.3d 527 (2007).  "During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'" *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 41, 241 Cal.Rptr. 539 (1987) (quoting *Sequoia Vacuum Systems v. Stransky*, 229 Cal.App.2d 281, 287, 40 Cal.Rptr. 203 (1964)).  The court in *Sequoia Vacuum Systems* further stated that "[e]very agent owes his principal the duty of undivided loyalty [and] [d]uring the course of his agency, he may not undertake or participate in activities adverse to the interests of his principal." *Sequoia Vacuum Systems*, 229 Cal. App. 2d at 287.

44.    The Bankruptcy Appellate Panel for the Ninth Circuit affirmed the bankruptcy court's determination that a state court judgment, which included claims for a breach of the duty of

loyalty, was non dischargeable under Section 523(a)(6). *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 315, 320-21 (9th Cir. BAP 2018); *see also The Spring Works, Inc., v. Sarff (In re Sarff)*, 242 B.R. 620, 628-630 (6th Cir. BAP 2000) (reversing bankruptcy court and holding that compensatory damages from breach of duty of loyalty arose from same conduct as other nondischargeable damages constituting willful and malicious injury, thus making them nondischargeable).

45.    The uncontroverted facts establish that the jury in the State Court Action made a number of findings when it held that Chaparala breached his duty of loyalty to All In One:

a.    Chaparala was an employee of All In One and knowingly acted against All In One's interest in connection with that employment, SUF Nos. 4 through 15, 18 through 21, and 71;

b.    All In One did not give informed consent to Chaparala's conduct, SUF Nos. 5 through 15, and 72;

c.    Chaparala's conduct was a substantial factor in causing All In One's harm, SUF No. 73;

d.    The harm caused by Chaparala's breach of the duty of loyalty resulted in damages to All In One in the amount of $420,547.96 for lost profits, $329,320.00 for salary paid during the period of secret competition, and $30,448.00 for the value of benefits paid during the period of secret competition, SUF No. 74; and

e.    Chaparala engaged in this conduct with malice, oppression or fraud, SUF No. 75.

46.    The court determines that these issues are relevant to and encompassed within those that a bankruptcy court would consider in determining if Chaparala's actions constituted a willful and malicious tortious injury to All In One under 11 U.S.C. § 523(a)(6) as the jury's findings of intentional tortious misconduct establish willfulness and malicious injury. The court determines that the underlying issues are identical, the Superior Court's Judgment was final and on the merits, the same parties are involved in both actions; therefore, the requisites for application of issue preclusion under *Plyam* are satisfied. The Court determines that All in One is entitled to judgment against Chaparala under 11 U.S.C. § 523(a)(6) as a matter of law based on the Judgment in the State Court Action on All In One's claim against him for breach of the duty of loyalty.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2                                    22

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

**D.      All In One is entitled to a determination of nondischargeability under 11 U.S.C. § 523(a)(4).**

47.      Section 523(a)(4) of the Bankruptcy Code, 11 U.S.C., excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).   The term "while acting in a fiduciary capacity" does not qualify the words "embezzlement" or "larceny."   11 U.S.C. § 523(a)(4).   Therefore, any debt resulting from embezzlement or larceny falls within the exception of subparagraph (a)(4). *Id.*

48.      The Ninth Circuit has held that "[f]or purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same.'" *Ormsby v. First American Title Co of Nevada. (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010) (citations omitted).

49.      The uncontroverted facts related to All in One's claims of larceny under 11 U.S.C. § 523(a)(4) against Chaparala include:

a.      Chaparala during his employment with All In One formed a competing company in the same line of business as All In One for the purpose of conducting business with All in One's customers and suppliers, which he concealed from All in One, SUF Nos. 4 through 15;

b.      Chaparala and his co-conspirator, Kim, developed a scheme based on Chaparala's position of trust and power with All in One, SUF Nos. 19, 20 and 21;

c.      This scheme was to divert business opportunities from All In One, SUF No. 21;

d.      Chaparala and Kim carried on business transactions with Chaparala for the purchase and sale of perfume, SUF No. 20;

e.      Chaparala and Kim knowingly would intercept All in One's orders and business opportunities and fill them either through RK Trading or through Kim's Entities, hence depriving All In One of those orders and opportunities, SUF Nos. 21, 43 through 57;

f.      Chaparala would steal All In One's inventory from its warehouse and sell that stolen inventory through either Kim's Entities or through RK Trading, SUF No. 68;

g.      Chaparala created this scheme to interfere with All in One's contracts with its customers and vendors, SUF No. 56;

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

h.    Chaparala provided Kim with the identity of All In One's vendors, SUF No. 26;

i.    Chaparala and Kim used invoices showing an equal split of their profits from their joint sales of perfume together, SUF No. 31;

j.    Chaparala and Kim diverted sales from All In One by importing goods which were delivered to Kim's brother's warehouse, SUF No. 27;

k.    Chaparala transmitted invoices to Kim for joint purchase of perfumes from third party vendors and referenced the shipment as "our shipment", SUF No. 28;

l.    Chaparala used Kim's sales permit to conduct business with other perfume merchants, SUF No. 29; and

m.    Chaparala wired thousands of dollars to Kim in her *personal* bank account, SUF No. 30.

50.    The court finds that the jury in the State Court Action made a number of findings when it held that Chaparala converted All In One's inventory.

a.    All In One owned or had a right to possess its product inventory, SUF Nos. 4 through 8, and 65;

b.    Chaparala intentionally and substantially interfered with All In One's property by taking possession of All In One's property or by preventing All In One from having access to All In One's property, SUF Nos. 4 through 14, 21, 26 through 31, 66;

c.    All In One did not consent to Chaparala's conduct and that conduct was a substantial factor in causing harm to All In One, SUF Nos. 5, 6, 9 through 14, and 67;

d.    The harm caused by Chaparala's conversion of All In One's inventory resulted in damages to All In One in the amount of $5,700,00.00 plus an award of pre-judgment interest in the amount of $913,873.96, SUF Nos. 41 and 68; and

e.    Chaparala engaged in this conduct with malice, oppression or fraud, SUF No. 69.

51.    The court determines that these issues are relevant to and encompassed within those that a bankruptcy court would consider in determining if Chaparala's actions constituted larceny under 11 U.S.C. § 523(a)(4) as the jury's findings of intentional tortious misconduct establish felonious taking of another's personal property with intent to convert it or deprive the owner of the same.  The court determines that the underlying issues are identical, the Superior Court's Judgment

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**

was final and on the merits, the same parties are involved in both actions; therefore, the requisites for application of issue preclusion under *Plyam* are satisfied. The court determines that All In One is entitled to judgment against Chaparala as a matter of law based on the Judgment in the State Court Action on All in One's claim against him on its claim for conversion for all damages suffered under Section 523(a)(4) as a separate and independent ground for nondischargeability.

### E.    Post-Judgment Interest Should be Found to be Nondischargeable.

52.    The court determines that All In One is entitled to a determination that the interest accruing on the Judgment after the initial entry of the Judgment by the Superior Court is not dischargeable under Section 523(a)(4) and (a)(6) of the Bankruptcy Code, 11 U.S.C. California Code of Civil Procedure § 685.010 provides that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." California Code of Civil Procedure § 685.010(a). The Supreme Court has held that interest is an "integral part" of a nondischargeable debt. *Bruning v. United States*, 376 U.S. 358, 360, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964).

53.    The Ninth Circuit has stated that "[t]he purpose of postjudgment interest 'is to compensate the successful plaintiff for being deprived of compensation for the loss of time between the ascertainment of the damage and the payment by the defendant.'" *United States v. Bell*, 602 F.3d 1074, 1083 (9th Cir. 2010), amended, 734 F.3d 1223 (9th Cir. 2013) (quoting *Dishman v. UNUM Life Insurance Co. of America*, 269 F.3d 974, 989 (9th Cir. 2001)). With respect to nondischargeability determinations, the Ninth Circuit has recognized that interest on a nondischargeable judgment debt should continue to accrue at the state rate, even after the bankruptcy court determines the nondischargeability of the debt. *Shoen v. Shoen (In re Shoen)*, 176 F.3d 1150, 1159 n. 7 (9th Cir. 1999), *cert. denied*, 528 U.S. 1075, 120 S.Ct. 789, 145 L.Ed.2d 666 (2000). The court determines that all interest arising after the entry of the Judgment by the Superior Court is nondischargeable at the California state rate of 10% per annum.

///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 39940383V2

25

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT

54.    The court will enter a separate form of judgment concurrently herewith.

IT IS SO ORDERED.

# # #

Date: August 3, 2020

_____

Robert Kwan
United States Bankruptcy Judge

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF
LAW IN SUPPORT OF RENEWED MOTION OF PLAINTIFFFOR SUMMARY JUDGMENT**